UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALAN TUCEK,

        Plaintiff,

v.

CADILLAC ACCOUNTS
RECEIVABLE MANAGEMENT, INC.,

        Defendant.

Case No. 17-cv-14233

Honorable Thomas L. Ludington

_____/

**OPINION AND ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES, REJECTING REPORT AND RECOMMENDATION AS MOOT, AND DENYING MOTIONS FOR SUMMARY JUDGMENT AS MOOT**

On December 29, 2017, Plaintiff Alan Tucek filed the instant Complaint against Defendant Cadillac Accounts Receivable Management, Inc., alleging various violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. ECF No. 1.

On November 25, 2019, Plaintiff filed a Notice of Acceptance of Offer of Judgment explaining that he had accepted "a Rule 68 offer of Judgment made by Defendant." ECF No. 45. The notice provided:

> The issue of costs and attorney's fees remains pending. If the parties are unable to agree to this amount, Plaintiff shall submit an application to the Court requesting a determination of said amount.

*Id.* at PageID.405. The parties were unable to agree on the amount of attorney's fees and Plaintiff subsequently filed a Motion for Attorney's Fees. ECF No. 47.

**I.**

**A.**

Congress passed the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). It provides that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

It regulates a debt collector's actions after a consumer has notified the debt collector that he or she disputes the debt. It provides:

> If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--
>
>> (1) to advise the consumer that the debt collector's further efforts are being terminated;
>>
>> (2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or
>>
>> (3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.
>
> If such notice from the consumer is made by mail, notification shall be complete upon receipt.

15 U.S.C. § 1692c(c).

> The FDCPA further provides that:
>
> If the consumer notifies the debt collector in writing within the thirty-day period…that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b).

**B.**

Shortly after Plaintiff filed his complaint, all pretrial matters were referred to Magistrate Judge Patricia T. Morris. ECF No. 3. Neither party has disputed the factual narrative of Judge Morris's most recent report, which provides:

> Plaintiff's two claims concern a debt that Defendant attempted to collect, allegedly in violation of the FDCPA. (ECF 23.) The debt arose from a doctor's visit in September 2011. (ECF 23 at PageID.184.) Plaintiff says that he paid the full medical bill and thought nothing of the matter until the doctor's office mailed him a letter in March 2017 demanding $100.00 for his earlier visit. (ECF 23 at PageID.185.) According to the complaint, the office indicated it had mistakenly underbilled him by that amount during the visit. (*Id.*) Plaintiff asked for proof but received none; instead, the claim was given to Defendant, a debt collector, for collection. (*Id.*)

> Defendant sent its first letter to Plaintiff on May 16, 2017. (ECF 23 at PageID.186.) As explained more below, a debt collector's initial communication must include or be followed within five days by written notice that, among other things, the consumer (*i.e.*, the debtor) can notify the collector by writing within thirty days that he or she is disputing the debt. 15 U.S.C. § 1692g(a)(4). At that time, collection efforts must cease until the debt collector verifies the debt. 15 U.S.C. §§ 1692g(a)(4), 1692g(b). The letter here informed Plaintiff of this right to dispute the debt. (ECF 1 at PageID.11.) The face of the letter— which is all that is in the record, as the back of it was not copied—contains the following address: "1015 Wilcox St, PO Box 358, Cadillac, MI 49601." (ECF 1 at PageID.11.) Elsewhere in the letter, Defendant stated that checks could be sent to "C.A.R.M. [*i.e.*, Defendant], PO Box 358, Cadillac, MI, 49601-0358." (ECF 1 at PageID.11.)

> A week after receiving the letter, Plaintiff disputed the debt in a letter sent to the address Defendant provided for sending checks, the P.O. box. (ECF 23 at PageID.186.) It was a certified letter, so Plaintiff was informed that a notice of its arrival was slipped into the P.O. box on May 25, 2017. (ECF 23 at PageID.187.) There it sat for days waiting for Defendant to pick up the notice and claim the letter. (ECF 23 at PageID.187.) But no one did and, roughly a month later, the unclaimed letter made its way back to Plaintiff. (ECF 23 at PageID.187.)

> This result was by design, according to a declaration made by Defendant's president Jon Dracht. (ECF 35 at PageID.218.) Defendant maintains a "longstanding and uniform practice" of ignoring certified-mail notices in its P.O. box, which Dracht assures is standard industry practice. (ECF 35 at PageID.218.) Apparently, "[t]he primary purpose of this policy is to better track and manage the response time to any attempted service of process for litigation." (ECF 35 at PageID.218.) For that

reason, "the policy applies to all certified mail, not merely communications that might come from consumers." (ECF 35 at PageID.218.)

According to Dracht's declaration, from June 19 until August 7, Defendant left four voicemails for Plaintiff and finally got through in a fifth call but was immediately hung up on by Plaintiff. (ECF 35 at PageID.187-188.) The day after the last phone call, Defendant fired off a letter to Plaintiff advising that he had "failed to send in your payment after repeated attempts by our office," and warning that the debt might go on his credit report. (ECF 1 at PageID.16.) Plaintiff responded with another letter addressed to the same P.O. box but this time apparently not sent by certified mail. (ECF 35 at PageID.221.) He again informed them that he disputed the debt. (ECF 35 at PageID.221.) After this, Dracht states that Defendant ceased its collection attempts, "treating the account as if it had been disputed within the initial 30 day validation period." (ECF 35 at PageID.218.)

ECF No. 44 at PageID.350-353.

Plaintiff filed his initial complaint in December 2017. ECF No. 1. It contained two claims under the FDCPA: (1) Defendant's policy of refusing certified mail is an unfair and unconscionable collection practice prohibited by 15 U.S.C. § 1692f, (ECF 1 at PageID.6); and (2) Defendant violated 15 U.S.C. § 1692g(b) by continuing collection efforts after Plaintiff sent his May 2017 letter disputing the debt, (*Id.* at PageID.8).

Defendant subsequently filed a motion for judgment on the pleadings, arguing that Plaintiff's allegations were deficient under the FDCPA because Plaintiff "admitted that the Defendant did not receive notice of his dispute." ECF No. 11 at PageID.61. The next month, Plaintiff filed a motion for leave to file an amended complaint. ECF No. 14.

The Court denied Defendant's motion for judgment on the pleadings and granted Plaintiff's motion for leave to file an amended complaint. It held that Plaintiff's § 1692f claim was viable because Defendant's practice of ignoring certified mail arguably qualified as unfair or unconscionable. ECF No. 19 at PageID.119. The Court further held that:

When a consumer has mailed a written notification by certified mail to a debt collector and has provided proof that the notification has been delivered, receipt by the debt collector has been established, and the notification requirements in §

1692g(b) have been satisfied so long as the mailing was timely. Here, Plaintiff timely mailed his notification of dispute and has proof of delivery from the post office—in the form of electronic verification—that the letter was delivered to Defendant's P.O. box. Whatever the reason for Defendant's decision to not collect its mail, it makes no sense—and would be contrary to the purpose of the statute— to allow Defendant to unilaterally decide whether a debt is disputed by choosing whether to collect its mail. Plaintiff has established receipt of his written dispute by providing proof of delivery, and has thus satisfied the notification requirements in § 1692g(b).

ECF No. 21 at PageID.134.

Plaintiff subsequently filed his amended complaint, which contained additional factual allegations regarding his alleged debt and the notice he mailed to Defendant.

## C.

On April 19, 2019, Plaintiff and Defendant both filed motions for summary judgment. ECF Nos. 35, 37. In her report, Judge Morris summarized the parties' motions for summary judgment as follows:

The parties have now filed cross motions. (ECF 35, 37.) Defendant asks for full summary judgment because, it argues, Plaintiff lacks standing to bring either claim; alternatively, Defendant seeks summary judgment on the § 1692f claim, contending that its policy of not collecting certified mail cannot rise to the level of an unfair or unconscionable practice. (ECF 35.) Plaintiff moves for summary judgment on both claims because, he asserts, Defendant's certified-mail policy lacks any conceivable justification and therefore violates § 1692f; and regarding § 1692g(b), there is no issue of material fact that Defendant continued collection efforts after receiving Plaintiff's May 2017 disputing the debt. (ECF 37.)

*Id.* at PageID.353-354.

Judge Morris recommended that Defendant's motion be denied and that Plaintiff's motion be granted in part and denied in part. She first addressed Defendant's argument that Plaintiff lacked standing to bring his claim, recommending that:

Plaintiff has alleged a concrete injury based on violations of the FDCPA. The two statutory provisions he cites create private rights that when violated in the manner alleged here give rise to standing. In particular, they shield him and other consumers from any debt collection attempts for a period after timely dispute letters are sent,

15 U.S.C. § 1692g(b), and from unfair debt collection practices at any time, 15 U.S.C. § 1692f. Here, the alleged violations of these statutes led to injury-in-fact: Defendant's policy of refusing certified mail caused it to target Plaintiff for collection during the § 1692g(b) moratorium. Therefore, injury-in-fact has been shown.

ECF No. 44 at PageID.376.

Second, Judge Morris addressed the parties' motions for summary judgment in relation to § 1692f which provides, "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Judge Morris recommended:

[A] jury question exists regarding Plaintiff's § 1692f claim. A factfinder could conclude that rejecting certified mail under these circumstances is unfair because it creates a significant risk that the consumer's statutory rights will be violated based on a questionable justification. In addition, the factfinder could take notice of the Defendant's "superior economic position" when considering unconscionability. *Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp 2d 1016, 1023 (S.D. Ohio 2007) (*citing Adams v. Law offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996)). Or the factfinder might believe that Plaintiff had alternative and equivalent means of submitting his written dispute, and thus Defendant's policy is not unfair. Perhaps, as a result, the factfinder might conclude that the link between the policy and the subsequent collection efforts is too attenuated. Because a reasonable factfinder could reach either conclusion, I suggest that a genuine issue of material fact exists regarding the § 1692f claim that precludes granting summary judge in favor of either party.

*Id.* at PageID.393-394.

Lastly, she addressed Plaintiff's motion for summary judgment in relation to § 1692g(b) which provides:

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Judge Morris recommended:

> [T]here is no genuine issue of material fact regarding Plaintiff's fulfillment of the statutory notice requirements and Defendant's continued collection efforts prior to verifying the debt. Consequently, Plaintiff is entitled to summary judgment on Defendant's liability for violating § 1692g(b).

ECF No. 44 at PageID.399-400.

## II.

Plaintiff filed a Notice of Acceptance of Offer of Judgment on November 25, 2019. [1] ECF No. 45. The notice provided:

> The issue of costs and attorney's fees remains pending. If the parties are unable to agree to this amount, Plaintiff shall submit an application to the Court requesting a determination of said amount.

*Id.* at PageID.405. The parties were unable agree on the amount of attorney's fees and Plaintiff filed a motion for attorney's fees. ECF No. 47. The motion will be granted in part and denied in part for the following reasons.

## A.

The FDCPA allows a successful plaintiff to collect costs and attorney's fees. It provides:

> [A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of …in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k. A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). The Sixth Circuit has held that:

> Waste is not in the public interest. The Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing nonproductive work and wasting their adversaries' time and the time of the courts as well. In directing the courts to award "reasonable" fees, on the contrary, Congress undoubtedly wished to ensure that the lawyer representing a successful

---

[1] The Notice of Acceptance of Offer of Judgment mooted the parties' motions for summary judgment and Judge Morris's Report and Recommendation.

plaintiff would receive a reasonable fee for work reasonably found necessary— nothing less, and nothing more.

*Lee v. Thomas & Thomas*, 109 F.3d 306-307 (6th Cir. 1997).

The lodestar method is used to determine a reasonable fee, which is "the proven number of hours reasonably expended on the case by an attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). This is determined by considering twelve factors:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Id.*, (quoting *Reed v. Rhodes*, 179 F.3d 453, 471-72 n. 3). The Sixth Circuit has also held that "[a] useful guideline in determining a reasonable hourly rate is the 'prevailing market rate [] in the relevant community." *Dowling v. Litton Loan Servicing LP*, 2009 WL 961124 at *3 (6th Cir. Apr. 9, 2009).

However, the number of hours spent on a case may be deemed excessive if "the lawyer used poor judgment in spending too many hours on some part of the case." *Coulter v. State of Tenn.*, 805 F.2d 146, 151 (6th Cir. 1986). The same holds true for the number of attorneys staffed to a case. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.").

**B.**

Plaintiff argues that his lodestar fee is $41,321. ECF No. 47 at PageID.416. He includes a table providing the basis for this calculation. It provides:

| Timekeeper | Rate | Time | Fee |
|---|---|---|---|
| Amorette Rinkleib | 250 | 10.9 | $2,725 |
| Amorette Rinkleib[2] | 300 | 8.6 | $2,580 |
| David McDevitt | 350 | 40.9 | $14,315 |
| Joseph Panvini | 350 | 34 | $11,900 |
| Robert Buddingh | 250 | 1 | $250 |
| Russell Thompson IV | 400 | 10.8 | $4,320 |
| Spencer Coon | 250 | 10.6 | $2,650 |
| Tremain Davis | 135 | 6.2 | $837 |
| Zac Landis | 135 | 1.8 | $243 |
| **Total** | | 124.8 | 39,820 |

ECF No. 47 at PageID.420-421.

Plaintiff also presents various court decisions in the Eastern District of Michigan in which courts held that similar fees are reasonable for FDCPA cases. *See, e.g., Litt v. Portfolio Recovery Associates, LLC*, 2015 WL 1849267 (E.D. Mich. April 22, 2015) (finding $350 to be a reasonable billing rate in a FDCPA case); *Salamango v. NCSPlus Inc.*, 2014 WL 3900583 (E.D. Mich. Aug. 11, 2014) (finding rates of $317 and $348 to be reasonable in a FDCPA case). Plaintiff further includes court decisions that have found similar rates by Plaintiff's own counsel to be reasonable. *See, e.g., Bea-Mone v. Silverstein*, 2019 WL 762676, at *4 (finding Plaintiff's counsel's unopposed rates of "$400 for Thompson; $350 for Rinkleib; $350 for Rosenberger; $350 for Pittman; $350 for Gill; $135 for Davis; and $135 for Landis" to be reasonable in a FDCPA case); *Christopher v. RJM Acquisitions LLC*, 2015 WL 3960163, at *2 (D. Ariz. June 30, 2015) (finding Plaintiff's counsel's unopposed "attorney rates at $300.00 an hour, $250.00 an hour, and $175.00 an hour for

---

[2] Plaintiff represents that during litigation, Ms. Rinkleib's billing rate increased.

three different attorneys and $135.00 an hour for non-attorney staff" to be reasonable in a FDCPA case).

## C.

Defendant does not contest Plaintiff's hourly rates, but instead, the hours Plaintiff dedicated to the case. Defendant argues that Plaintiff spent excessive time correcting deficiencies in his initial pleadings and drafting his motion for summary judgment. Each argument will be addressed in turn.

## 1.

Plaintiff filed his initial complaint in December 2017. ECF No. 1. Defendant subsequently filed a motion for judgment on the pleadings, pointing out that Plaintiff's allegations were deficient under the FDCPA because Plaintiff "admitted that the Defendant did not receive notice of his dispute." ECF No. 11 at PageID.61. The next month, Plaintiff filed a motion for leave to file an amended complaint, "in order to better plead the facts upon which Plaintiff's cause of action relies" and "to expound upon and clarify the factual circumstances and legal theories surrounding the allegations previously pleaded in this matter." ECF No. 14 at PageID.70.

Plaintiff's amended complaint differed very little from his initial complaint. He did not add any new claims, legal theories, or parties. Instead, he simply inserted additional factual details. This included a general explanation of certified mail and post office boxes and the fact that the alleged debt was owed to Petoskey Ear, Nose, and Throat Specialists. Presumably in response to Defendant's argument, the amended complaint provided, "Defendant received these subsequent notices in its P.O. Box that Plaintiff's letter was available for pick up." ECF No. 23 at PageID.187. Beyond the addition of these factual details and minor editing, the two complaints differ little from each other in substance.

Plaintiff has not explained why he did not provide these factual allegations in his initial complaint. Nor has he explained why it required 16.3 hours to make these minor edits and to draft a three-page motion seeking leave to amend the complaint. Plaintiff argues that "Defendant could have simply given Plaintiff leave to amend his pleadings as Rule 15 contemplates. That would have saved all the parties (and the Court) time and aggravation." ECF No. 49 at PageID.1079.

Plaintiff's initial complaint was deficient because it lacked a necessary element of the claim, specifically that Defendant had received notice of Plaintiff disputing the alleged debt. The initial complaint expressly stated the opposite, specifically that Defendant *had not* received notice of Plaintiff disputing the alleged debt. The Court ultimately granted Plaintiff leave to file his amended complaint under Rule 15, which counsels a Court to grant leave to amend freely. However, Rule 15 does not require a court to grant the moving party's attorney's fees.

The same holds true for Plaintiff's response to Defendant's Motion for Judgment on the Pleadings. It argues that Defendant's motion was moot because Plaintiff had filed a motion for leave to file an amended complaint which "addresse[d] several of the purported deficiencies Defendant argued existed in the original complaint." ECF No. 15 at PageID.92. Plaintiff aptly described it as a "*short* response to Defendant's motion for judgment on the pleadings." ECF No. 15 at PageID.91 (emphasis added). The text of the body of the response is barely a page in length and less than 250 words.

It is unclear how Plaintiff expended 16.9 hours of labor drafting the response. Plaintiff contends that he "initially began briefing a direct response to Defendant's motion, but ultimately decided to amend his pleadings." ECF No. 49 at PageID.1079. Defendant will not be required to pay for this change in Plaintiff's approach. Furthermore, 16.9 hours of labor, more than two working days, far exceeds a reasonable time for preparing an initial beginning of a draft.

**2.**

Defendant next takes issue with the amount of time Plaintiff attributes to briefing his motion for summary judgment and his response to Defendant's motion for summary judgment, specifically:

| | |
|---|---|
| Summary Judgment Brief: | 19.1 hours |
| Reply to Response to Summary Judgment: | 8.6 hours |
| Response to Defendant's Motion for Summary Judgment: | 18 hours |

ECF No. 48 at PageID.1072.

In his motion for summary judgment, Plaintiff presented four primary arguments. First, he explained that "Defendant concedes that Plaintiff is a 'consumer' under the FDCPA." ECF No. 37 at PageID.236. Second, he argued that Defendant was a "debt collector" as defined under the FDCPA. *Id.* Third, he argued that Defendant violated the FDCPA by continuing to attempt to collect after Plaintiff send his certified mail disputing the alleged debt.

Lastly, he argued that Defendant's practice of not retrieving certified mail is "unfair or unconscionable" under the FDCPA. *Id.* at PageID.241. He argued that "[t]he question before the Court, then, is whether the maintenance of this policy constitutes an unfair or unconscionable means of collection as a matter of law." *Id.* at PageID.242. Plaintiff reasoned that Defendant's policy was unfair and unconscionable because it "serves no conceivable benefit to the consumer and clearly frustrates his ability to communicate with his debt collector." *Id.* at PageID.243.

Plaintiff argues that the time spent on summary judgment motion briefings was justified because his claim "was novel–that Defendant had engaged in an unfair practice by refusing to collect its mail and that it had failed to provide verification of Plaintiff's alleged debt due to its

failure to collect Plaintiff's dispute letter." ECF No. 47 at PageID.427; *see also* ECF No. 49 at PageID.1078.

It is unclear how Plaintiff's claim could be considered a novel when the FDCPA itself provides "[i]f such notice from the consumer is made by mail, notification shall be complete upon receipt." 15 U.S.C. § 1692c(d). Furthermore, Plaintiff's briefing on this "novel issue" consists of little more than two and a half pages of text and analyzes a single Supreme Court case. Such abbreviated briefing does not justify 19.1 hours of drafting the motion for summary judgment and 8.6 hours drafting a reply to Defendant's response. Furthermore, the case only involved one plaintiff, one defendant, and two claims.

In Defendant's motion for summary judgment, it challenged Plaintiff's standing to bring a claim. The argument needlessly complicated the case and the Court rejected it, finding that "Defendant's policy of refusing certified mail caused it to target Plaintiff for collection during the § 1692g(b) moratorium. Therefore, injury-in-fact has been shown." ECF No. 44 at PageID.376. Defendant also argued that its practice of refusing certified mail did not rise to the level of unfairness or unconscionability contemplated by § 1692f. The Court also rejected this argument. Accordingly, Plaintiff may recover attorney's fees for his time drafting his response brief to Defendant's motion for summary judgment.

### III.

In support of his motion for attorney's fees, Plaintiff included a Task-Based Itemization document that provides individual entries for each task performed by Plaintiff's attorneys. ECF No. 47-2. Each entry provides the task's date, the attorney's name, a brief description of the task, the total time spent on the task, the attorney's billing rate, and the total amount billed for the task. The Court reviewed the entire Task-Based Itemization and using the description of each task,

identified the tasks that were dedicated to the four filings that were unnecessary or billed in excess

(as explained above). *See supra* Section II.C. They are as follows:

1. Response Brief to Defendant's Motion for Judgment on the Pleadings

2. Motion for Leave to File an Amended Complaint

3. Motion for Summary Judgment

4. Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment

The Court then identified each attorney who worked on each filing, totaled the amount of

time the attorney spent on that filing, and multiplied that amount by the attorney's hourly rate.[3] It

provides

**Response Brief to Defendant's Motion for Judgment on the Pleadings**

| NAME | TIME | HOURLY RATE | TOTAL CHARGED |
|---|---|---|---|
| Tremain Davis | 0.4 | 135 | 54 |
| Joseph Panvini | 13.9 | 350 | 4865 |
| Russell Thompson | 1.7 | 400 | 680 |
| Spencer Coons | 7.2 | 250 | 1800 |
| TOTAL | 23.2 | | 7399 |

**Motion for Leave to File an Amended Complaint**

| NAME | TIME | HOURLY RATE | TOTAL CHARGED |
|---|---|---|---|
| Joseph Panvini | 13.4 | 350 | 4690 |
| Russell Thompson | 1.8 | 400 | 720 |
| Spencer Coons | 3.4 | 250 | 850 |
| Amorette Rinkleib | 0.8 | 250 | 200 |
| TOTAL | 19.4 | | 6460 |

**Motion for Summary Judgment**

| NAME | TIME | HOURLY RATE | TOTAL CHARGED |
|---|---|---|---|
| Russell Thompson | 1.3 | 400 | 520 |

---

[3] It is noted that the Court's calculation of the total time dedicated to each filing differs from Defendant's calculation. However, the Court is not making an exact determination of the amount of time Plaintiff's attorneys spent on the filings. Instead, it is coming to an approximation based on the information furnished by Plaintiff. *See Fox v. Vice*, 563 U.S. 826, 838 (2011) (holding that the "essential goal is to do rough justice, not to achieve auditing perfection.")

| Name | Time | Hourly Rate | Total Charged |
|---|---|---|---|
| Amorette Rinkleib | 0.7 | 300 | 210 |
| Robert Buddingh | 1 | 250 | 250 |
| David McDevitt | 15.3 | 350 | 5355 |
| TOTAL | 18.3 | | 6335 |

**Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment**

| NAME | TIME | HOURLY RATE | TOTAL CHARGED |
|---|---|---|---|
| Russell Thompson | 0.8 | 400 | 320 |
| Amorette Rinkleib | 0.4 | 300 | 120 |
| David McDevitt | 6.7 | 350 | 2345 |
| TOTAL | 7.9 | | 2785 |

In summary, the Court has calculated the cost of each of the four filings as follows:

- Response brief to Defendant's Motion for Judgment on the Pleadings (ECF No. 15): $7,399

- Motion for Leave to File an Amended Complaint (ECF No. 14): $6,460

- Motion for Summary Judgment (ECF No. 37): $6,335

- Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (ECF No. 42): $2,785

The total amount of attorney's fees for the four filings equals $22,979.

Plaintiff requests attorney's fees totaling $39,820.[4] ECF No. 47. However, this figure includes the $22,979 that were dedicated to the four filings that were unnecessary or billed in excess. Accordingly, $22,979 will be deducted from $39,820. Specifically, $39,820 - $22,979 = $16,841.

Accordingly, Plaintiff is entitled to recover $16,841 in attorney's fees from Defendant.

**IV.**

---

[4] Plaintiff's motion is not consistent in the amount of requested attorney's fees. In four instances, he requests $41,321, but in two instances requests $39,820. The Court will construe $39,820 as the request sum because $39,820 appears as part of Plaintiff's calculation of attorney's fees. In contrast, Plaintiff does not explain how he calculated $41,321.

It is **ORDERED** that Plaintiff's Motion for Attorney's Fees, ECF No. 47, is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff may recover $16,841 in attorney's fees from Defendant.

It is further **ORDERED** that Judge Morris's Report and Recommendation, ECF No. 44, is **REJECTED AS MOOT**.

It is further **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 35, is **DENIED AS MOOT**.

It is further **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 37, is **DENIED AS MOOT**.

Dated: March 16, 2020                              s/Thomas L. Ludington
                                                   THOMAS L. LUDINGTON
                                                   United States District Judge